UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:

NTS W. USA CORP., A DELAWARE
CORPORATION,

                                                  Debtor.

-------------------------------------------------------------x

NTS W. USA CORP., A DELAWARE
CORPORATION,

                                              Appellant,              **OPINION & ORDER**

       - against -                                                      No. 20-CV-6692 (CS)

605 FIFTH PROPERTY OWNER, LLC,

                                                Appellee.

-------------------------------------------------------------x

Appearances:

George P. Angelich
Eric Roman
D. Austin Rettew
Arent Fox LLP
New York, New York

James H. Hulme
Arent Fox LLP
Washington, DC
*Counsel for Appellant*

Jay B. Solomon
Brian Bendy
Belkin Burden Goldman, LLP
New York, New York
*Counsel for Appellee*

Seibel, J.

Before the Court is the appeal of NTS W. USA Corp., a Delaware Corporation, ("Appellant" or "DUSA"), from the Bankruptcy Court's Final Judgment entered on August 14, 2020, in an adversary proceeding. (Doc. 19-14 ("Final Judgment").) The Final Judgment, entered by stipulation, incorporated the Bankruptcy Court's rulings on DUSA's motion for a preliminary injunction. (*Id.*) It dismissed DUSA's claims against 605 Fifth Property Owner, LLC, ("Appellee" or "Landlord"). (*Id.* ¶¶ 4-9, 11-12.) It also enjoined Appellee from drawing down on a letter of credit, but only through August 14, 2020. (*Id.* ¶¶ 10, 13.) DUSA now appeals the Bankruptcy Court's rejection of its claims for cancelation of, or abatement of rent due under, the commercial lease agreement between the parties. For the following reasons, the Bankruptcy Court's Final Judgment is AFFIRMED.

## I.    BACKGROUND

Although this case arises in a bankruptcy proceeding, it is essentially a breach of contract dispute between landlord and tenant. I set forth below only the facts relevant to the disposition of this matter.

### A.    Facts

DUSA, doing business as Desigual, is a distributer of clothing, accessories, and other fashion products, with retail stores in the United States. (Doc. 19-4 ("Adversary Complaint") ¶¶ 8-9; *see* Doc. 19-5 at A141-215 (the "Lease") § 1.01(BBB).)[1] DUSA, as tenant, and 605 Fifth Property Owner, LLC, as landlord, are parties to a three-year commercial lease dated January 17,

---

[1] References to page numbers beginning with "A" refer to the Bates numbers in the appendix to Appellant's Brief.

2

2020, for a retail space at 605 Fifth Avenue in New York, New York, (the "Leased Premises"). (Lease at A146; *see* Adversary Complaint ¶ 8.)

Under the terms of the Lease, Landlord would deliver possession of the Leased Premises to DUSA "on or about May 1, 2020, and in no event earlier than April 1, 2020." (Lease § 1.01(O).) The Lease requires that the ground floor of the Leased Premises be used "exclusively for the retail sale and display of men's, women's and children's apparel, footwear, accessories, handbags and other related goods," with the basement used for storage, a break room, an office, or another use ancillary to Appellant's business. (*Id.* § 1.01(BBB).) It specifies that DUSA operate its business "in a high-class and reputable manner" that is "consistent and in harmony with the standards of similar type retail establishments in comparable buildings located in the vicinity of the Building." (*Id.* § 4.04(B).) According to DUSA, the fundamental purpose of the Lease "was to provide DUSA with a highly visible luxury retail location at the heart of the world-renowned Fifth Avenue shopping corridor." (Doc. 19 ("Appellant's Br.") at 17; *see* Adversary Complaint ¶¶ 9-11.)

The Lease contains several provisions that contemplate events outside the parties' control and allocate the risk of loss accordingly. Section 5.05 of the Lease, titled "Interruption of Access, Use or Services," contemplates events that could prevent the tenant from accessing or using the premises caused by "natural occurrences . . . or by any other condition beyond Landlord's reasonable control." (Lease § 5.05.) The Lease is explicit that in such an event, "Tenant shall not be entitled to any damages . . . nor . . . relieve[d] . . . of the obligation to pay all sums due." (*Id.*)[2] It further provides that DUSA would not be entitled to damages or relieved of

---

[2] Section 5.05 of the Lease provides in full:

3

its obligation to pay "if any governmental entity promulgates or revises Applicable Law, or imposes mandatory or voluntary controls or guidelines on . . . the Property." (*Id.*)  The Lease also specifies that "Tenant shall procure . . . [b]usiness interruption insurance with coverage for at least one (1) year." (*Id.* § 4.07(A)(6).)  Additionally, the Lease provides that *force majeure* events, including "acts of nature" and "other natural disaster[s]," (*id.* § 1.01(BB)), may excuse DUSA from certain specific obligations, such as its duty to pay "Percentage Rent" during a "Temporary Cessation[]" period, (*id.* §§ 1.01(RRR), 1.05(H)).  There is nothing in the Lease releasing DUSA from paying base rent. (*Compare id.* § 1.05(H), *with id.* § 1.04(A).)

In March 2020, as the COVID-19 pandemic swept across the country, New York shut down non-essential retail businesses and barred construction to slow the spread of the virus. (Adversary Complaint ¶¶ 19-21, 23-26; Doc. 19-5 at A122-24, A225-26; *see* Doc. 19-13 ("Hearing Tr.") at A434-35; Doc. 19-8 at A250-51.)  As a result, DUSA was "precluded by law

---

> Landlord shall not be liable for any failure (to the extent required of it by this Lease) to provide access to the Premises, to assure the beneficial use of the Premises or to furnish any services or utilities to the common and public areas of the Property when such failure is caused by natural occurrences, riots, civil disturbances, insurrection, war, court order, public enemy, accidents, breakage, repairs, strikes, lockouts, other labor disputes, the making of repairs, alterations or improvements to the Premises or the Property, the inability to obtain utilities, labor or other supplies or by any other condition beyond Landlord's reasonable control, and Tenant shall not be entitled to any damages resulting from such failure, nor shall such failure relieve Tenant of the obligation to pay all sums due hereunder or constitute or be construed as a constructive or other eviction of Tenant.  If any governmental entity promulgates or revises Applicable Law, or imposes mandatory or voluntary controls or guidelines on Landlord or the Property relating to the use of the Premises or the Property or the conservation of any utility or service provided with respect to this Lease, or if Landlord is required or elects to make alterations to the Property in order to comply with such controls or guidelines, Landlord may comply with such controls or guidelines, or make such alterations to the Property.  Neither such compliance nor the making of such alterations shall entitle Tenant to any damages, relieve Tenant of the obligation to pay any of the sums due hereunder, or constitute a constructive or other eviction of Tenant.

(*Id.*)

4

from opening and operating its [planned] retail store." (Adversary Complaint ¶ 14.) On March 25, Landlord notified DUSA that it would deliver the premises on April 1. (Doc. 19-5 at A222-23; Adversary Complaint ¶ 27.) On March 27, DUSA responded that it could not accept the tender of the Leased Premises because of government orders related to the COVID-19 pandemic. (Doc. 19-5 at A225-26; Adversary Complaint ¶ 29.)

Although the temporary restriction on construction was lifted on June 8 and retail businesses were permitted to reopen on June 22, governmental COVID-19 regulations, such as travel restrictions and social distancing guidelines, remained in effect. (Hearing Tr. at A426, A435; Doc. 19-8 at A250-51, A262.) According to DUSA's Chief Restructuring Officer, Brian Ryniker,

> the retail market in New York City came to a complete halt, and it has been extremely slow to return. Tourism in New York City had also come to a halt. Because of quarantine requirements and other COVID mitigation strategies, tourist foot traffic is substantially below what is needed to support the DUSA store.

(Doc. 19-11 ¶ 12.) DUSA refused to pay the rent, and Landlord threatened to seize DUSA's security deposit by drawing down on the letter of credit provided by DUSA. (Adversary Complaint ¶¶ 34, 56, 103-04.)

### B.  Proceedings Below

On July 7, 2020, Landlord issued a Notice of Default, and on July 16, it issued a Notice of Event of Default and Intent to Terminate Lease. (*Id.* at ¶¶ 34-35.) On July 22, 2020, DUSA filed its petition under subchapter V of chapter 11 of the Bankruptcy Code, *see* Bankr. No. 20-35769, and the next day filed its adversary complaint against Landlord, *see* Bankr. No. 20-9035.[3]

---

[3] "Bankr. No." refers to a docket in the U.S. Bankruptcy Court for the Southern District of New York.

5

On July 23, the Bankruptcy Court issued a Temporary Restraining Order enjoining Landlord from drawing down on the letter of credit. (Doc. 19-6.) On August 11, the Bankruptcy Court held a telephonic hearing and issued an oral opinion preliminarily enjoining Landlord from drawing down on the letter of credit until August 14, 2020, at 11:59 p.m., but otherwise finding no likelihood of success on the merits on DUSA's claims that the Lease should be terminated, or that rent should be abated, due to impossibility of performance or frustration of purpose. (Hearing Tr. at A422-26; *see* Final Judgment at A458-59.)[4] Judge Morris explained that the impossibility doctrine "comes into play where the contract does not expressly allocate the risk," (Hearing Tr. at A422), and rejected DUSA's impossibility defense because "the parties contemplated situations such as this, and the lease provided for them," (*id.* at A424). Regarding the frustration-of-purpose doctrine, Judge Morris found that "it cannot be said that the debtor's purpose is still frustrated and virtually worthless" because the city was no longer "in complete shutdown" and construction and retail sales were permitted to continue. (*Id.* at A426.) She again noted that "[t]he lease contained provisions that were designed for a situation such as the one the parties are in. As such, the doctrine of frustration fails." (*Id.*)

On August 14, by the parties' stipulation and request, the Bankruptcy Court entered the Final Judgment, dismissing DUSA's claims and allowing the preliminary injunction to expire on August 14, 2020 at 11:59 p.m. (Final Judgment.)

---

[4] The Bankruptcy Court determined that New York City's 68-day suspension of non-essential construction work constituted a "Violation Condition" as a "stop work order," (*see* Lease § 1.01(AAAA)), and thus, under the terms of the Lease, DUSA was entitled to a 68-day extension of the 60-day period at the start of the lease during which DUSA was not obligated to pay base rent, (*see id.* §§ 1.01(CC), 1.04(B), 2.02(F); Hearing Tr. at A433-36). Based on that finding, Judge Morris granted "on a limited basis" DUSA's request for a preliminary injunction preventing Landlord from drawing down on the letter of credit only through August 14, 2020, and DUSA was required to pay base rent starting August 15, 2020. (Hearing Tr. at A439.)

### C. <u>Appeal</u>

On August 17, 2020, Appellant filed its Notice of Appeal. (Doc. 1.)[5] DUSA challenges the Bankruptcy Court's denial of its claim that the Lease should be canceled or that rent due under the Lease should be abated or deferred due to frustration of purpose or impossibility of performance. (Appellant's Br. at 2.) Landlord argues (i) that Appellant waived its rights to appeal the Final Judgment by voluntarily stipulating to the judgment, and (ii) that Appellant's claims of frustration of purpose and impossibility are baseless. (Doc. 20 ("Appellee's Br.") at 11-12.)

## II. <u>LEGAL STANDARD</u>

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. A district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *Overbaugh v. Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009) (*per curiam*). "When reviewing for clear error, [the Court] may reverse only if [it is] left with the definite and firm conviction that a mistake has been committed." *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (cleaned up). "Thus, if the factual findings of the bankruptcy court are plausible in light of the record viewed in its entirety, this Court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Savage & Assocs., P.C. v. Williams Commc'ns (In re Teligent Servs., Inc.)*, 372 B.R. 594, 599 (S.D.N.Y. 2007) (cleaned up). "And where there are two permissible views of the

---

[5] On August 26, 2020, Appellee filed a motion to expedite the appeal, (Doc. 4), which the Court denied on August 31, 2020, (Doc. 10).

evidence, the factfinder's choice between them cannot be clearly erroneous." *Lawsky v. Frontier Ins. Grp., LLC* (*In re Frontier Ins. Grp., Inc.*), 598 B.R. 87, 96 (S.D.N.Y. 2019) (cleaned up).

## III. DISCUSSION

DUSA argues that the Bankruptcy Court erred in concluding that DUSA was not entitled to cancel the Lease because: (i) the fundamental purpose of the Lease was frustrated by the unforeseeable effects of the pandemic; (ii) New York courts have applied the frustration-of-purpose doctrine to cancel leases in "much less severe circumstances"; and (iii) both the frustration-of-purpose and impossibility-of-performance doctrines "require abatement of rent due during the government-ordered COVID-19 shutdown." (Appellant's Br. at 15-16.) DUSA also argues that, "[a]t a minimum, [it] should not have to pay full rent," and that "this case should be remanded with instructions to the Bankruptcy Court to determine a fair rental rate for these premises in the present COVID-19 pandemic conditions." (*Id.* at 26.)

### A.   Right to Appeal

According to Landlord, DUSA waived its right to appeal by voluntarily stipulating to the entry of a final judgment without expressly reserving the right to appeal. (Appellee's Br. at 1-2.) Landlord asserts that "[a] party who consents to the substance of a judgment *without expressly reserving its right to appeal* is presumed to have waived its right to appeal from the judgment." (*Id.* at 13) (emphasis in original). It further contends that the language in the Final Judgment that "neither party is waiving its arguments as set forth in its papers or at the hearing," does not "mention anything about reserving the right to *appeal* the Final Judgment, only that the parties are not waiving their *arguments*." (*Id.* at 14) (emphasis in original). The Court cannot imagine (and Landlord has not suggested) to what that sentence might refer if not to reserving rights on appeal, as appeal is the remaining pathway after a final judgment. Further, the cases Landlord

cites provide no support for its argument and correctly draw a "distinction between consenting to the substance of a judgment" and "merely consenting to the judgment's form." *Taylor Brands, LLC v. GB II Corp.*, 627 F.3d 874, 878 (Fed. Cir. 2010) ("[N]o waiver exists – even without a reservation of appellate rights – when a party consents solely to the form of a judgment, because merely agreeing to the form of a judgment does not in itself imply that the party agrees with the judgment's substantive outcome or intends to abandon its position on the issues."). Moreover, "both the Supreme Court and the courts of appeals have repeatedly held that the entry of a stipulated final judgment after a dispositive ruling does not bar an appeal." *Id*. at 877. While Bankruptcy Judge Morris's ruling on the application for a preliminary injunction was not a dispositive ruling, the parties agreed that no purpose would be served by further proceedings and that it would be most efficient to treat the ruling as dispositive. It is plain to this Court – and must have been plain to Appellee – that Appellant, by stipulating to the entry of the Final Judgment, was seeking to expedite, not waive, its appeal. I thus turn to the merits.

      **B.**     **Frustration of Purpose**

DUSA contends that unique circumstances support its claim for rescission because "[a]s a result of COVID-19, the government shut down orders, and the evisceration of Fifth Avenue retail, performing the Lease no longer gives DUSA what induced it to make the Lease in the first place." (Appellant's Br. at 20.) DUSA also points to the "specific and unique" fact that this case involves a "new and un-commenced Lease," which it argues supports applying the frustration-of-purpose doctrine. (*Id.* at 26.)

The frustration-of-purpose doctrine discharges a party's contractual duties "where a virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party." *United States v. Gen. Douglas MacArthur Senior Vill., Inc.*, 508 F.2d 377, 381 (2d Cir. 1974).

9

The doctrine is applied narrowly and only when "the frustration is substantial." *A + E Television Networks, LLC v. Wish Factory Inc.*, No. 15-CV-1189, 2016 WL 8136110, at *12 (S.D.N.Y. Mar. 11, 2016) (cleaned up). "In order to be invoked, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, the transaction would have made little sense." *In re Condado Plaza Acquisition LLC*, 620 B.R. 820, 839 (Bankr. S.D.N.Y. 2020). In other words, "[t]here must be a showing that a circumstance that induced the contract no longer exists, and that circumstance must be the very foundation of the contract." *Id.* at 840.

In addition, "[i]t is not enough that the transaction will be less profitable for an affected party or even that the party will sustain a loss." *Id.* at 839-40. "In New York, a party is not excused from a contract simply because it becomes more economically difficult to perform," *A + E Television Networks,* 2016 WL 8136110, at *13, and "a change in market conditions or an increase in the cost of performance are insufficient grounds to assert" New York's frustration-of-purpose defense, *Health-Chem Corp. v. Baker*, 737 F. Supp. 770, 776 (S.D.N.Y.), *aff'd*, 915 F.2d 805 (2d Cir. 1990). "Quite a bit more is required than demonstrating a desire to avoid the consequences of a deal gone sour." *Id.*

Importantly, the doctrine may not be invoked, and thus offers no defense to the enforcement of a contract, when "the terms of the contract impose the relevant risks on one of the parties." *In re Condado Plaza Acquisition LLC*, 620 B.R. at 840.

Many New York courts assessing commercial lease disputes amidst the COVID-19 pandemic have held that the temporary and evolving restrictions on a commercial tenant's business do not warrant rescission or other relief based on the frustration-of-purpose doctrine. *See, e.g.*, *Gap Inc. v. 170 Broadway Retail Owner, LLC*, No. 2020-04770, 2021 WL 2653300, at *2 (N.Y. App. Div. June 29, 2021) ("The doctrine of frustration of purpose does not apply as a

10

matter of law where, as here, the tenant was not completely deprived of the benefit of its bargain.") (cleaned up); *E. 16th St. Owner LLC v. Union 16 Parking LLC*, No. 653839/2020, 2021 WL 143471, at *2 (N.Y. Sup. Ct. Jan. 15, 2021) ("That their customer base was reduced because of the pandemic is not a basis to find that the frustration of purpose doctrine should apply here."); *35 E. 75th St. Corp. v. Christian Louboutin L.L.C.*, No. 154883/2020, 2020 WL 7315470, at *2 (N.Y. Sup. Ct. Dec. 9, 2020) (rejecting frustration of purpose argument even though "defendant's business model of attracting street traffic is no longer profitable because there are dramatically fewer people walking around due to the pandemic"); *1140 Broadway LLC v. Bold Food, LLC*, No. 652674/2020, 2020 WL 7137817, at *2 (N.Y. Sup. Ct. Dec. 3, 2020) ("[T]he tenant's business was devastated by a pandemic.  That does not fit into the narrow doctrine of frustration of purpose.").

My colleague Chief Judge Laura Taylor Swain reached a similar conclusion in *Gap Inc. v. Ponte Gadea N.Y. LLC*, No. 20-CV-4541, 2021 WL 861121 (S.D.N.Y. Mar. 8, 2021).  The court found that the tenant in that case did not show that the purpose of the lease – the "operation of a 'first-class retail business'" – "was so completely frustrated by the COVD-19 pandemic that the transaction makes little sense." *Id.* at *8-9 (cleaned up) ("The possibility that the stores at issue in this case may suffer particularly adverse financial consequences from the COVID-19 pandemic does not amount to frustration of the purpose of the Lease.").  The court also observed that the lease contemplated the possibility that a government restriction might frustrate its purpose, thus "defeating any claim that the possibility was 'wholly unforeseeable.'" *Id.* at *8.

The same is true here.  Section 5.05 of the Lease expressly contemplates that "natural occurrences," government-imposed controls or guidelines, or "other condition[s] beyond Landlord's reasonable control" could prevent the tenant from accessing or using the premises.

11

(Lease § 5.05.)  The Lease is explicit that in such an event, DUSA would not be released from "the obligation to pay all sums due."  (*Id.*)  In light of the parties' express allocation of risk,[6] the Bankruptcy Court correctly concluded that the Tenant's frustration of purpose claim fails as a matter of law.  *See Gap Inc.*, 2021 WL 861121, at *8 ("[T]o the extent Gap contends that New York State's blanket prohibition on non-essential business . . . frustrated the purpose of the Lease, the possibility of just such a prohibition was referenced in the Lease itself, defeating any claim that the possibility was 'wholly unforeseeable.'"); *In re Condado Plaza Acquisition*, 620 B.R. at 840 ("Nor is the [frustration-of-purpose] defense available if the terms of the contract impose the relevant risks on one of the parties."); *see also 1600 Walnut Corp. v. Cole Haan Co. Store*, No. 20-4223, 2021 WL 1193100, at *2 (E.D. Pa. Mar. 30, 2021) ("Only where there has been no contractual allocation of a risk should a court determine the allocation based on common law theories, such as impossibility and frustration of purpose.").[7]

---

[6] The COVID-19 pandemic falls within § 5.05 as a "natural occurrence," *see JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 501 (S.D.N.Y. 2020) ("It cannot be seriously disputed that the COVID-19 pandemic is a natural disaster."), *appeal filed*, No. 21-32 (2d Cir. Jan. 6, 2021), and the ensuing shutdown orders are plainly government-imposed controls or guidelines and conditions beyond Landlord's reasonable control.  It does not matter that a pandemic or government shutdown orders were not specifically listed in the paragraph.  *See Valentino U.S.A., Inc. v. 693 Fifth Owner LLC*, No. 652605/2020, 2021 WL 668788, at *1 (N.Y Sup. Ct. Jan. 27, 2021) (parties expressly allocated the risk despite "[t]he fact that the COVID 19 pandemic was not specifically enumerated by the parties . . . because the Lease is drafted broadly and encompasses the present situation by providing that nothing contained in . . . the Lease including 'restrictive governmental laws or regulations,' certain cataclysmic events, 'or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed in performing work or doing acts required' shall excuse the payment of rent"); *see also Victoria's Secret Stores, LLC v. Herald Square Owner LLC*, No. 651833/2020, 2021 WL 69146, at *1 (N.Y. Sup. Ct. Jan. 7, 2021) ("It is of no moment that the specific cause for the government law was not enumerated by the parties because the Lease as drafted is broad and encompasses what happened here – a state law that temporarily caused a closure of the tenant's business.").

[7] DUSA unpersuasively argues that *Gap Inc.* is "inapposite and factually different." (Doc. 23 at 1.)  Specifically, DUSA asserts that the Lease here "never commenced"; that the

Even had the parties not contemplated these risks, the record does not support DUSA's argument that pandemic-related restrictions on its use of the Leased Premises "completely altered the fundamental basis" of the Lease, or that the Lease "has no economic value." (Appellant's Br. at 18). The pandemic triggered several months of shutdown followed by an evolving set of restrictions that have reduced – but not eliminated – DUSA's ability to generate

---

primary purpose of the lease was "fundamentally frustrated" because tourist traffic on Fifth Avenue has yet to recover even after the mandatory closures; and that the *Gap Inc.* court "relied heavily" on *force majeure* language in reaching its decision. (*Id.* at 1-2.)

First, DUSA points out that the shutdown orders, which barred DUSA from operating or constructing its store, occurred before the Lease could commence. (*Id.* at 2.) But it neither explains why that would matter in applying the frustration-of-purpose doctrine, nor provides authority suggesting it should. DUSA also elides the fact that New York's COVID-19 shutdown order was only temporary and, as Landlord argues, "the temporary suspension of construction work did not prohibit Tenant from preparing the Premises for the Tenant's Work, such as performing measurements, preparing construction plans and completing other preliminary non-construction work necessary to prepare the Premises for occupancy." (Appellee's Br. at 22 n.5.) Additionally, the temporary restrictions were lifted as of June 8, 2020. (Doc. 19-8 at A250-51; Hearing Tr. at A435.) Moreover, the Lease contemplated temporary impediments to DUSA completing the necessary alterations to the Leased Premises and provided for an extension of the Free Base Rental Period during that time. (Lease § 2.02(F).)

Next, in stating that the primary purpose of the Lease was to serve "tourist traffic on Fifth Avenue," DUSA relies on "uncontroverted evidence" – the testimony of its Chief Restructuring Officer in the bankruptcy proceedings below. (Doc. 23 at 1.) DUSA's subjective intent in entering the Lease, however, ignores the plain terms of the Lease. *See Rosenblatt v. Christie, Mason & Woods Ltd.*, 195 F. App'x 11, 12 (2d Cir. 2006) (summary order) ("Where, as here, a contract is unambiguous, it is enforced according to its terms, and the court will generally not look outside the four corners of the document to add to or vary it.") (cleaned up). There is no provision of the Lease that represents that the neighborhood of the Premises will be "well-trafficked," (Appellant's Br. at 17), or a "tourist-heavy, luxury shopping destination," (Doc. 21 ("Appellant's Reply") at 7). Nor does the Lease condition the payment of rent on such conditions – a provision for which DUSA could have bargained.

Finally, far from relying heavily on the wording of the *force majeure* provision in that case, the *Gap Inc.* court's discussion of the frustration-of-purpose doctrine contains a single sentence citing that provision, *see* 2021 WL 861121, at *8, and while the language there specifically contemplated a public emergency, the specific event at issue need not be spelled out for a *force majeure* clause to allocate risk, *see* note 6 above.

13

revenue from its retail operation.[8] *See Greater N.Y. Auto. Dealers Ass'n, Inc. v. City Spec, LLC*, No. LT-053560-20/QU, 2020 WL 8173082, at *9 (N.Y. Civ. Ct. Dec. 29, 2020) ("[E]ven if Respondent were forced by the Executive Order to close in-person operations at the Premises, a four-month closure out of a five-year lease did not frustrate the overall purpose of the Lease."); *see also* Hearing Tr. at A426 (as of the bankruptcy petition date, "construction and retail sales were permitted to continue with certain . . . restrictions"). That operations at the Leased Premises will likely be less lucrative than DUSA expected, perhaps even significantly so, does not suffice to show frustration of purpose. *See Gap Inc.*, 2021 WL 861121, at *9; *see also CAI Rail, Inc. v. Badger Mining Corp.*, No. 20-CV-4644, 2021 WL 705880, at *9 (S.D.N.Y. Feb. 22, 2021) ("At most, [Defendant] has shown that the contract has become unprofitable and 'more onerous' which does not excuse performance under New York law."). Accordingly, the Bankruptcy Court appropriately concluded that DUSA had not shown either that the purpose of the Lease was "still frustrated" or that the Lease was "virtually worthless." (Hearing Tr. at A426.)

Although the adverse economic effects of the pandemic are undoubtedly significant, the Bankruptcy Court did not err in finding the narrow doctrine of frustration of purpose inapplicable.[9]

---

[8] While there are no guarantees, I may take judicial notice of the fact that tourism and other economic activity in midtown Manhattan continue to revive.

[9] Appellant argues that *UMNV 205-207 Newbury LLC v. Caffé Nero Americas, Inc.*, No. 2084CV01493-BLS2, 2021 WL 714016 (Mass. Super. Ct. Feb. 8, 2021), "is more instructive" than *Gap, Inc.* (Doc. 23 at 1.) There, a Massachusetts court held that the *force majeure* provision did "not address the distinct risk that the performance could still be possible even while the main purpose of the Lease is frustrated by events not in the parties' control." *UMNV 205-207 Newbury LLC*, 2021 WL 714016, at *6. I do not find that case persuasive, and in any event, I think the Lease here addresses both the risk that performance may become impossible and the risk that performance may become frustrated. (*See* Lease § 5.05) ("Landlord shall not be

C. **Impossibility**

DUSA next argues that it should not be obligated to pay rent "for at least April, May, and June of 2020" when New York's shutdown order was in effect. (Appellant's Br. at 25.)[10] DUSA further requests that the case "be remanded with instructions to the Bankruptcy Court to determine a fair rental rate for these premises in the present COVID-19 pandemic conditions" because "DUSA should not have to pay full rent to operate in what was once a coveted luxury shopping corridor but is no longer." (*Id.* at 26.)

"The law in New York is well settled that once a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome." *Urb. Archaeology Ltd. v. 207 E. 57th St. LLC*, No. 600827/2009, 2009 WL 8572326, at *4 (N.Y. Sup. Ct. Sept. 10, 2009) (cleaned up), *aff'd*, 891 N.Y.S.2d 63 (App. Div. 2009). "The impossibility of performing the contract may be raised as an affirmative defense in a breach of contract action, but financial difficulty or economic hardship of the promisor, even to the extent of insolvency or bankruptcy, does not establish impossibility sufficient to excuse performance of a contractual obligation." *Id.* "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or

---

liable for any failure . . . to assure the beneficial use of the Premises . . . . If any governmental entity promulgates or revises Applicable Law, or imposes mandatory or voluntary controls or guidelines on Landlord or the Property relating to the use of the Premises or the Property . . . Landlord may comply with such controls or guidelines . . . . [S]uch compliance . . . shall [not] entitle Tenant to any damages [or] relieve Tenant of the obligation to pay any of the sums due hereunder . . . ."). And, as noted, even if the Lease did not contemplate the situation here, its purpose is not completely frustrated.

[10] DUSA's argument that it should not be required to pay rent for April, May, and June of 2020 is perplexing given that the Bankruptcy Court extended the Free Base Rental Period, which began on April 1, until August 14, (Final Judgment at A458-59), which helped DUSA "g[e]t out of rent for the past four months," (Hearing Tr. at A440).

15

the means of performance makes performance objectively impossible.  Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim Corp. v Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902 (1987).  The defense is applied narrowly, "due in part to judicial recognition that the purpose of contract law is to allocate the risk that might affect performance and that performance should be excused only in extreme circumstances." *Id.*  Such circumstances exist when "performance is impossible due to the destruction of the means of performance by [an] act of God, *vis major*, or by law." *Ebert v. Holiday Inn*, 628 F. App'x 21, 23 (2d Cir. 2015) (summary order) (cleaned up).

Here, the Bankruptcy Court correctly determined that the impossibility defense is inapplicable because "the parties contemplated situations such as this, and the lease provided for them."  (Hearing Tr. at A424.)  The lease was entered into by sophisticated commercial parties who anticipated that future events, including "natural occurrences, . . . any other condition beyond Landlord's reasonable control," or "governmental . . . controls or guidelines" might occur.  (Lease § 5.05)  The parties agreed that in such an event, "Tenant shall not be entitled to any damages . . . nor . . . relieve[d] . . . of the obligation to pay all sums due." *Id.*; *see also Urb. Archaeology Ltd.*, 2009 WL 8572326, at *5 ("The contract here was entered into by sophisticated commercial parties who could have anticipated the possibility that future events might result in financial disadvantage on the part of either party, even if the precise cause or extent of such financial disadvantage was not foreseen at the time the contract was executed.  Thus, under the circumstances extant at bar the impossibility of performance doctrine does not relieve plaintiff of its obligations under the Lease.") (citation omitted).  Thus, like the frustration-of-purpose doctrine, the doctrine of impossibility does not relieve DUSA of its obligations under the Lease because the event was foreseeable and accounted for. *See Gander Mountain Co. v.*

*Islip U-Slip LLC*, 923 F. Supp. 2d 351, 362 ("Impossibility and frustration of purpose refer to two distinct doctrines in contract law, but both require unforeseeability.") (cleaned up); *see also Ebert*, 628 F. App'x at 24 ("To establish impossibility, the inability to perform must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract.") (cleaned up); *Gap Inc.*, 2021 WL 861121, at *10 ("Gap's impossibility defense fails because the very text of the Lease demonstrates that the conditions that Gap claims render performance impossible were foreseeable."); *A/R Retail LLC v. Hugo Boss Retail, Inc.*, 149 N.Y.S.3d 808, 827 (N.Y. Sup. Ct. 2021) ("To the extent Tenant's impossibility argument is predicated on government orders – both during the shutdown period and afterward – the force majeure provisions in the Lease indicate that the risk of such disruptions were not unforeseeable.").[11]

The Bankruptcy Court thus correctly held that Appellant's performance was not excused by either the frustration or impossibility doctrine.[12]

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Final Judgment is AFFIRMED. The Clerk of Court is respectfully directed to close the case.

---

[11] DUSA's argument that "[t]he shutdown rendered it simply impossible for DUSA to comply with its obligations under the Lease," (Appellant's Br. at 25), may arguably hold water for the period of the shutdown – for which it seems it did not have to pay rent – but is otherwise unpersuasive because by the time it filed its complaint in July 2020, its operations were no longer prohibited. *See Gap Inc.*, 2021 WL 2653300, at *2 ("[P]laintiff's assertion that Executive Order 202.8 [Governor Cuomo's March 20, 2020 shutdown order] rendered it objectively impossible to perform its operations as a retail store as required by the lease is unavailing as defendant correctly points out that by the time plaintiff filed its complaint in July 2020, this was no longer the case.").

[12] DUSA argues that the case should be remanded with instructions to the Bankruptcy Court to determine a fair rental rate. (Appellant's Br. at 26; Appellant's Reply at 22.) Because neither doctrine applies, remand would serve no purpose.

17

**SO ORDERED.**

Dated: September 9, 2021
      White Plains, New York

                                                   CATHY SEIBEL, U.S.D.J.